IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARKUS LAMON MANNIE (#2014-0524069),<br><br>    Plaintiff,<br><br>v.<br><br>SERGEANT CAMPOS, OFFICER JUDKINS, OFFICER J. PARISI, OFFICER P. GUERRERO, OFFICER B. O'HEARN and OFFICER P. FITZPATRICK,<br><br>    Defendants. | Case No. 16 C 1068<br><br>Judge Jorge L. Alonso |

## MEMORANDUM OPINION AND ORDER

Plaintiff Markus Mannie brings this suit pursuant to 42 U.S.C. § 1983 and Illinois law, claiming that defendants, all of whom are or were Cook County Jail correctional officers, used excessive force against him during his pretrial detention. Defendants have moved for partial summary judgment. For the following reasons, the motion is granted in part and denied in part. The motion is granted as to the claims against Officer Guerrero arising out of the November 24, 2015 incident. It is otherwise denied.

## BACKGROUND

This case concerns two incidents in which defendants allegedly used excessive force against plaintiff during his pretrial detention in Cook County Jail. The first incident took place on November 24, 2015, and the second took place on August 15, 2016.[1] The present motion for

---

[1] Plaintiff initially asserted the claims arising out of the 2016 incident in a separate case, Case Number 16 C 9799. The Court consolidated that case with this one for purposes of judicial economy. In the consolidated Second Amended Complaint, plaintiff asserts all claims arising out of both incidents, and Case Number 16 C 9799 has been closed.

summary judgment concerns only the first incident. The parties have submitted statements of material facts and responses pursuant to Northern District of Illinois Local Rule 56.1. Based on these statements and responses, the following facts are undisputed, unless otherwise noted.

On the afternoon of November 24, 2015, defendant Officer Judkins escorted plaintiff through the basement of a building in Cook County Jail Division 9, intending to take him from fingerprinting to one of the "tiers," or living units. Surveillance video taken in that basement on that date shows that plaintiff, his hands cuffed behind his back, stepped out into a hallway with Officer Judkins and then turned in response to another detainee calling out from down the hall. Plaintiff and the other detainee exchanged words, and, after a moment, Officer Judkins told plaintiff, "Come on, Mannie. Let's go." Officer Judkins pulled plaintiff around to proceed down the hallway in the direction opposite the detainee who had called out. Plaintiff continued to talk to the other detainee over his shoulder. Officer Judkins instructed plaintiff to stop resisting.

From there, a scuffle ensued. The parties dispute how it transpired. According to defendants, the surveillance video shows that plaintiff repeatedly turned around, even "coming to a complete stop," while Officer Judkins attempted to direct him away from the other detainee and toward the other end of the hallway. After plaintiff made a final attempt to turn around and "yank his arms and body forward, in an aggressive manner, away from" Officer Judkins, plaintiff began "moving his feet quickly," forcing Officer Judkins to perform "an emergency takedown." (Defs.' Mem. at 6-7, ECF No. 163.) While on the ground, plaintiff "continue[d] to push[] and flail[] his legs until assisting officers arrive[d] to secure" him. (*Id.* at 7.)

According to plaintiff, Officer Judkins pulled, pushed, and shoved plaintiff forward, causing him to "fr[eeze] up." (Pl.'s LR 56.1 Resp. ¶ 17, ECF No. 170; Defs.' LR 56.1 Resp. ¶¶ 4-

2

5, ECF No. 173.) Plaintiff describes the video as showing that plaintiff said something to Officer Judkins while walking forward, and then Officer Judkins shoved plaintiff again, spun him around to his left, and used his right leg to trip plaintiff and take him to the ground. (Defs.' LR 56.1 Resp. ¶¶ 6-7.) Plaintiff was in a seated position on the ground, hands still cuffed behind him, when Officer Judkins threw plaintiff into a prone position and began punching him and slamming his head to the floor. Other correctional officers ran down the hall to assist Officer Judkins, piling on top of him. According to plaintiff, the video nowhere shows plaintiff fighting back or actively resisting at any point.

Following this incident, plaintiff was charged in Illinois state court with the offense of resisting an officer.[2] He pleaded guilty, and he was sentenced to 364 days' imprisonment, with credit for time served.

In the operative Second Amended Complaint, plaintiff asserts three claims arising out of the November 24, 2015 incident: use of excessive force in violation of plaintiff's due process rights, pursuant to 42 U.S.C. § 1983 (Count I), battery under Illinois law (Count II), and willful and wanton conduct under Illinois law (Count III).

## **ANALYSIS**

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam*, 642 F.3d 578, 581 (7th Cir. 2011). The Court may not weigh conflicting evidence or make credibility determinations, but the party opposing

---

[2] Presumably, plaintiff was charged under 720 ILCS 5/31-1, although the parties do not identify the statute.

3

summary judgment must point to competent evidence that would be admissible at trial to demonstrate a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). A genuine dispute is one that could change the outcome of the suit and is supported by evidence sufficient to allow a reasonable jury to return a favorable verdict for the non-moving party. *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010).

Defendants argue that they are entitled to summary judgment on the claims arising out of the 2015 incident because the evidence does not create a genuine material factual dispute as to whether they used force that exceeded constitutional standards or that amounted to willful and wanton misconduct sufficient to subject them to liability for battery under Illinois law, *see* 745 ILCS 10/202, 745 ILCS 10/1-210. Further, defendants argue, even if they did use excessive force, they are entitled to qualified immunity. Additionally, defendants argue that plaintiff's claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), and its progeny because plaintiff must prove facts that would undermine the validity of his criminal conviction.

**I. Excessive Force, Qualified Immunity, and Battery**

"Section 1983 creates a species of tort liability," *Manuel v. City of Joliet*, 137 S. Ct. 911, 916 (2017) (internal quotation marks omitted), against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution," 42 U.S.C. § 1983. The due process clause of the Fourteenth Amendment prohibits the use of excessive force against pretrial detainees. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015). "Under the Fourteenth Amendment, an officer's use of force is excessive where it 'amounts to punishment,' is 'not rationally related

4

to a legitimate governmental purpose,' or 'appear[s] excessive in relation to that purpose' when viewed objectively." *Price v. McCoy*, No. 19-CV-02560, 2021 WL 5179918, at *6 (N.D. Ill. Nov. 8, 2021) (quoting *Kingsley*, 576 U.S. at 397-98).

To prevail on an excessive force claim, a pretrial detainee must "show . . . that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396-97. "'[O]bjective reasonableness turns on the facts and circumstances of each particular case,' including 'the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.'" *Williams v. Stauche*, 709 F. App'x 830, 834-35 (7th Cir. 2017) (quoting *Kingsley*, 576 U.S. at 397). In balancing these factors, courts must "account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Kingsley*, 576 U.S. at 397 (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)).

Qualified immunity "shields officials from civil liability [under § 1983] so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (reversing denial of qualified immunity in an excessive force case). "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in defendant's shoes would have understood that he was violating it.'" *Kisela v. Hughes*, 138 S.

5

Ct. 1148, 1153 (2018) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014)).

In this case, both sides have submitted statements of material facts and responses in accord with this district's Local Rule 56.1, and these documents show that both sides rely primarily on the surveillance video. Courts do not make findings of fact at the summary judgment stage, and "'videos are sometimes unclear, incomplete, and fairly open to varying interpretations.'" *Smith v. Finkley*, 10 F.4th 725, 730 (7th Cir. 2021) (quoting *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018)). But some videos are crystal clear, and, even at summary judgment, courts need not "indulge stories clearly contradicted by [video] footage" that "firmly settles a factual issue." *Horton*, 883 F.3d at 944. Thus, "'[a] conclusive video allows a court to know what happened and decide the legal consequences,' but a video that is ambiguous or 'not wholly clear' can be relied on only for those facts that can be established 'with confidence' and 'beyond reasonable question.'" *Smith*, 10 F.4th at 730 (quoting *Johnson v. Rogers*, 944 F.3d 966, 967, 969 (7th Cir. 2019)).

Defendants argue that the surveillance video of the 2015 incident shows that, at the time of the takedown, plaintiff was refusing to follow Officer Judkins's commands to turn around and proceed down the hallway. Given plaintiff's ongoing resistance, defendants contend, Officer Judkins's use of force was reasonable under the circumstances. Plaintiff responds that what the video actually shows is that, after Officer Judkins pulled plaintiff away from his hallway conversation and directed him toward the opposite end of the hallway, plaintiff complied (if slowly) by walking in the direction Officer Judkins wanted him to, while talking to Officer Judkins over his shoulder. Then, suddenly and without provocation, according to plaintiff, Officer Judkins took plaintiff down and slammed his head to the ground, with several other officers running down

the hall to pile on top of plaintiff. According to plaintiff, there was nothing in the video to justify the level of force Officer Judkins and the other officers used.

This video is in the category of those open to varying interpretations, and summary judgment based on the video is therefore inappropriate. However one might view the video footage, it is not remotely conclusive in the way defendants suggest. The video shows that plaintiff stepped into the hallway and stopped to speak with someone down the hall while Officer Judkins waited for about fifteen or twenty seconds. Then, Officer Judkins appeared to attempt to pull plaintiff around and prod him toward the opposite end of the hallway. While walking ahead of Officer Judkins in the direction the officer was prodding him, plaintiff twisted to speak over his shoulder. In these frames and those that follow over the next few seconds, just prior to the takedown, the video seems to show some pushing and/or pulling—but reasonable jurors might differ as to how much force the respective parties were exerting relative to one another. A reasonable juror could conclude that while plaintiff was slow to comply with Officer Judkins's directions, his actions such as twisting to speak to Officer Judkins and (as defendants put it) "moving his feet quickly" were a natural reaction to being forcefully yanked and/or shoved by Officer Judkins, not a sign of threatening or obstructive behavior. And if so, that finding, in conjunction with other evidence, might support a conclusion that the takedown was objectively unreasonable under the circumstances. *See Mitchell v. Krueger*, 594 F. App'x 874, 877 (7th Cir. 2014) (vacating grant of summary judgment for defendants because reasonable juror could find that, while defendant officers were justified in using some force to restrain an inmate who had started a fight, they continued to exert force "for no reason except to cause him pain," even after the inmate was no longer "a threat to anyone," and the inmate did not "pose a new threat simply

7

because he predictably reacted to the pain").

A juror inclined to view the footage in that way might find further support for his conclusion in defendants' failure to cite any evidence or make any argument to explain why a takedown was necessary to accomplish any legitimate penological objectives, nor are any apparent. This juror might conclude that plaintiff does not appear in the video to have behaved threateningly toward Officer Judkins, and his resistance to moving in the direction Officer Judkins was leading him was mild at worst. Only approximately forty-five seconds elapsed between the time that Officer Judkins and plaintiff stepped into the hallway and the takedown, and plaintiff did not appear to be blocking the corridor or otherwise creating any disturbance. A juror who viewed the video in this way could reasonably conclude that there was no rational basis for Officer Judkins to escalate the situation by using force, or at least not the amount of force he used in effecting the takedown and thereafter. Even if some force was necessary to direct plaintiff where Officer Judkins wanted him to go, it does not follow that the takedown was necessary. *See Allen v. Richardson*, No. 16-CV-410-WMC, 2019 WL 135683, at *6 (W.D. Wis. Jan. 8, 2019) (denying summary judgment because of factual dispute over whether defendant officer who was plainly justified in using "*some* force" to break up a fight nevertheless continued to use force unnecessarily even after "order had already been restored"); *see also Price v. McCoy*, No. 19-CV-02560, 2021 WL 5179918, at *7 (N.D. Ill. Nov. 8, 2021), *Gates v. Bathon*, No. 14-CV-0018-MJR-SCW, 2016 WL 362332, at *5 (S.D. Ill. Jan. 29, 2016).

And even if the takedown was necessary, it does not follow that all of the considerable force that defendants used was necessary. A reasonable juror could conclude that the video shows that plaintiff was not resisting after being taken down, but that Officer Judkins nevertheless

punched plaintiff and slammed his head into the floor, and several other officers piled on top of him. On this view of the facts and in the absence of any other justification for defendants' conduct, it would be possible to conclude that defendants' conduct was objectively unreasonable because it was not rationally related to a legitimate government purpose or was excessive in relation to that purpose. A reasonable juror could conclude that plaintiff's slowness to move in the direction Officer Judkins led him was apparently causing little harm or risk of harm and, therefore, did not call for the use of a level of force that risked serious injury. *See Price*, 2021 WL 5179918, at *7.

It goes without saying that, if the jury sees things from plaintiff's point of view, then defendants are not entitled to qualified immunity, as it was clearly established by the time of the incident that "officers cannot punish pretrial detainees by subjecting them to unreasonably excessive force when they are not actively resisting." *Blunt v. Lindsey*, No. 21-CV-325, 2022 WL 3555095, at *3 (E.D. Wis. Aug. 18, 2022) (citing cases decided in 2015 or earlier); *see Fillyaw v. Tenhaken*, No. 20-CV-827, 2022 WL 951757, at *7 (E.D. Wis. Mar. 30, 2022) ("[I]t is well-established that using force for no reason on a detainee who is under an officer's control is excessive.") (citing *Johnson*, 944 F.3d at 970); *see also Becker v. Elfreich*, 821 F.3d 920, 928-29 (7th Cir. 2016) (citing cases establishing that officers cannot continue to use force on suspect who has been subdued and can only use minimal force when suspect is only passively resisting).

The same reasoning requires the denial of summary judgment as to plaintiff's state-law battery claim. "The primary issue underlying both [§ 1983] excessive force and battery claims is whether the force used by [peace officers] was objectively reasonable under the circumstances." *Rebolar ex rel. Rebolar v. City of Chicago, Ill.*, 897 F. Supp. 2d 723, 741-42 (N.D. Ill. 2012). Here, as explained above, a reasonable jury could find that the circumstances were such that defendants'

9

use of force was not objectively reasonable. Defendants have invoked the Illinois Tort Immunity Act, which immunizes them from liability while enforcing the law unless their actions were willful and wanton, 745 ILCS 10/202, but this statute does not get them over the summary-judgment hump because a jury could conclude that their actions were willful and wanton, if it interprets the video and other evidence favorably to plaintiff. Willful and wanton conduct is that which "shows an actual or deliberate intention to cause harm," 745 ILCS 10/1-210, and a reasonable juror could conclude that defendants' conduct revealed an intent to cause harm, if he were to find that they continued to use a dangerous level of force against a nonresisting or passively resisting detainee. Relatedly, defendants also ask the Court to grant summary judgment on the issue of whether plaintiff may be entitled to punitive damages, arguing that the evidence would not warrant a jury in finding that their conduct was willful, wanton, or in reckless or callous disregard for plaintiff's rights. But defendants are incorrect; a reasonable jury could indeed so find.

Finally, defendants argue that defendant Officer Guerrero is entitled to summary judgment because there is no evidence that he used any force against plaintiff in the November 24, 2015 incident. Defendants argue that Officer Guerrero can be seen in the surveillance video arriving late to the scene, standing apart from the fray and making no contact with plaintiff. Plaintiff admits in his Local Rule 56.1 response that he does not know if Officer Guerrero caused any of the injuries he claims to have suffered in the 2015 incident, and he does not directly respond to defendants' argument about Officer Guerrero. Under these circumstances, the Court agrees that Officer Guerrero is entitled to summary judgment in his favor on all claims arising out of the 2015 incident.

## II. *Heck v. Humphrey* And Plaintiff's Conviction For Resisting An Officer

Under the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), after a person has been

convicted of committing a crime, he cannot assert a § 1983 claim arising out of the same incident if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction." Defendants argue that plaintiff was convicted of resisting a correctional officer, so he is barred from claiming that defendants' use of force against him was unjustified.

Defendants are correct that plaintiff's conviction bars him from asserting that he never resisted or obstructed a correctional officer in the performance of his duties or that none of the defendants was ever justified in using any force against him, no matter how slight. If plaintiff's claims rested on these narrow propositions, then his claims would be *Heck*-barred. But the gravamen of plaintiff's complaint is the use of *excessive* force: the takedown, punching, head-slamming, and piling-on, all of which, plaintiff claims, were excessive in relation to any legitimate penological purpose such as managing the facility, preserving order, and maintaining security.

A plaintiff who has been convicted of resisting an officer is not barred from contending that the officer "used force that was unreasonable in relation to the nature of [the plaintiff's] obstruction" because his contention "can be resolved in [his] favor without casting any doubt on the validity of his conviction." *Johnson*, 944 F.3d at 968; *see id.* ("The propositions 'the suspect resisted arrest' and 'the police used too much force to effect the arrest' can be true at the same time. And so we held in *Evans v. Poskon*, 603 F.3d 362 (7th Cir. 2010), and its successors, such as *Mordi v. Zeigler*, 870 F.3d 703 (7th Cir. 2017), and *Hill v. Murphy*, 785 F.3d 242 (7th Cir. 2015)."). Even if plaintiff's complaint might be read to suggest that he never offered any resistance at all, it is clear from his response brief that he is willing to proceed with his claims to whatever extent they are based on the excessive force with which defendants responded to his resistance, and are therefore compatible with his conviction. Plaintiff is entitled to proceed on the

11

understanding that the scope of his claims is limited in that way; he "need not repudiate his allegation that he did nothing wrong in order to maintain that he was the victim of excessive force," nor must he "adopt the defendants' view of what occurred in order to contest the degree of force used." *Evans*, 603 F.3d at 364 (citing *Gilbert v. Cook*, 512 F.3d 899, 902 (7th Cir. 2008)); *see Gates*, 2016 WL 362332, at *5. While plaintiff may not contend at trial that he *never* resisted or obstructed any correctional officer in performing his duties, his claims are not *Heck*-barred to the extent that he claims only that defendants used excessive force against him.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment [162] is granted in part and denied in part. Summary judgment is granted for defendant Guerrero and against plaintiff on the claims against Officer Guerrero arising out of the November 24, 2015 incident. The motion is otherwise denied.

**SO ORDERED.**  **ENTERED**: October 5, 2022

**HON. JORGE L. ALONSO**
**United States District Judge**